IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**CHRISTOPHER BANKS**                                                                         **PLAINTIFF**

**v.**                                                                           **CIVIL ACTION NO. 2:20-cv-29-KS-MTP**

**CITY OF PETAL, MISSISSIPPI, ET AL.**                                        **DEFENDANTS**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Motion for Summary Judgment [53] filed by Defendants City of Petal, Mississippi, Cody Pitts, and Clay Sullivan. Having considered the Motion [53], the record, and the applicable law, the undersigned recommends that the Motion [53] be granted and that this action be dismissed with prejudice.

## BACKGROUND

On February 14, 2020, Plaintiff Christopher Banks, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983. The allegations in Plaintiff's Complaint arose from events which took place during his arrest on December 8, 2019, in Petal, Mississippi. In his Complaint, Plaintiff named the Petal City Police Department as a defendant and alleged the following (as stated by the *pro se* Plaintiff):

> Petal Police Dept. were called to 126 Wilson Drive, for a disturbance of the peace. When the officers got there I was being cuffed by one officer, then the other one began to taze me. I was then detained and taken outside, I was threatened by the officer and from being scared I moved away from the officer. I was then tazed and kicked in the face until unconscious.

*See* [1] at 4.

Plaintiff eventually dismissed the Petal City Police Department and added as defendants the City of Petal, Mississippi ("the City"), Officer LeByron Jackson, and John Doe Police

1

Officers. *See* Response [9] at 1; Order [12].  Plaintiff explained that Defendant Jackson was one of the officers who used force against him. *Id*.

On November 17, 2020, Defendants Jackson and the City filed a Motion for Summary Judgment [21] arguing that Jackson is entitled to qualified immunity and that, because there was no underlying constitutional violation on the part of Jackson, the City is entitled to summary judgment.  After these Defendants filed their Motion for Summary Judgment [21], Plaintiff filed a Motion to Amend [24] seeking to add Officers Cody Pitts and Clay Sullivan as defendants because they too allegedly used excessive force against Plaintiff during his arrest.

On June 28, 2021, the Court—finding that Defendant Jackson was entitled to qualified immunity—granted the Motion for Summary Judgment [21], dismissed Plaintiff's claims against Defendant Jackson, and dismissed Plaintiff's claims against the City arising out of Jackson's conduct. *See* Order [27].  The Court, however, ordered that this action continue for consideration of whether Officers Pitts and Sullivan should be added as defendants and whether Plaintiff was asserting claims against the City arising out of the conduct of these officers. *Id*.

On July 8, 2021, the Court granted Plaintiff's Motion to Amend [24], adding Pitts and Sullivan as defendants.  Thereafter, the Court conducted a *Spears*[1] hearing, during which Plaintiff clarified his claims.  According to Plaintiff, on December 8, 2019, he entered the home of his estranged wife through a window.  A neighbor called 911, and officers from the Petal Police Department responded to the scene.  One of the officers (who is not a defendant in this case) began placing restraints on Plaintiff.  Allegedly, the officer had placed one of Plaintiff's hands in the restraints when one of the individual Defendants—either Officer Pitts or Officer

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Sullivan[2] —used a taser on him, even though he was not resisting. Plaintiff fell to the floor and officers finished placing restraints on him. *See* Omnibus Order [43].

Thereafter, Pitts and Sullivan allegedly led Plaintiff outside and threatened him. Pitts and Sullivan walked away from Plaintiff to speak to one another. As Pitts and Sullivan walked back toward Plaintiff, one of them pulled out a taser. According to Plaintiff, he "jumped back and moved," but did not flee. Then, the Defendant who pulled out the taser (either Pitts or Sullivan) used it on Plaintiff, and when Plaintiff fell to the ground, the other Defendant kicked Plaintiff in the face until he was unconscious. Thereafter, Defendants placed Plaintiff in a patrol car. Emergency medical technicians arrived, examined Plaintiff, and cleaned him. Plaintiff alleges that he suffered injuries to his neck and nose. *Id*.

Plaintiff also named the City as a defendant, but Plaintiff's claims against the City do not arise from the conduct of Pitts and Sullivan. Instead, Plaintiff alleges that, after the demonstrations precipitated by the death of George Floyd in Minneapolis, Minnesota and after Plaintiff's arrest, the City's mayor made comments on social media indicating that he supported police officers.

On March 1, 2022, Defendants Pitts, Sullivan, and the City filed the instant Motion for Summary Judgment [53] arguing that Pitts and Sullivan are entitled to qualified immunity and that all Defendants are entitled to summary judgment. Plaintiff did not file a response to the Motion [53].

---

[2] Plaintiff testified that both Pitts and Sullivan used excessive force against him, but he does not know which one of the two is Pitts and which one is Sullivan.

**STANDARD FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

## ANALYSIS

In the Motion for Summary Judgment [53], Defendants Pitts and Sullivan raise the defense of qualified immunity. The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Anderson v. Valdez*, 845 F.3d 580, 599-600 (5th Cir. 2016). A plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Id*. If the defendant did violate the plaintiff's constitutional rights, "the court then asks whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation and internal quotation marks omitted).

The Fourth Amendment protects individuals from the use of excessive force during a seizure. *Deville*, 567 F.3d at 169. To make out a Fourth Amendment excessive force claim, a plaintiff must establish "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). "[T]he right to make an arrest . . . necessarily

carries with it the right to use some degree of physical coercion or threat to effect it." *Graham v. Conner*, 490 U.S. 386, 396 (1989). The reasonableness of the force used is determined by considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. The force used "must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id*.

In support of their Motion for Summary Judgment [53], Defendants submitted affidavits from Carolyn Banks, former defendant Jackson, Defendant Pitts, and Defendant Sullivan. According to Carolyn Banks, on December 7, 2019, she left work during a break and entered her home where Plaintiff—Carolyn's estranged husband—grabbed her, threatened to harm her if she did not have sex with him, and attempted to sexually assault her. *See* [53-1] at 2. Carolyn and Plaintiff tussled, with Plaintiff attempting to undress Carolyn. *Id*. Eventually, Plaintiff left, and Carolyn returned to work. *Id*.

At approximately 11:00 p.m. that night, after Carolyn had finished her shift at work and returned home, she heard Plaintiff attempting to pry open a window. *Id*. Plaintiff threatened to kill Carolyn. *Id*. She called 911, but by the time police officers arrived, Plaintiff had fled. *Id*. A few hours later, at approximately 3:00 a.m., Plaintiff returned and broke into the home. *Id*. Plaintiff threatened to kill Carolyn, punched her, and attempted to place a rope around her throat and sexually assault her. *Id*. at 2-3. Eventually, police officers arrived and arrested Plaintiff. *Id*. at 3.

In his affidavit, Officer Jackson described the events surrounding Plaintiff's arrest. *See* [53-2]. According to Jackson, he and other officers were dispatched to Carolyn's residence after she called 911 but were unable to find Plaintiff after they arrived. *Id*. at 2. Jackson spoke with

6

Carolyn and advised her to call 911 if Plaintiff returned. *Id*. Later, Jackson and other officers were again dispatched to Carolyn's residence after neighbors reported hearing a woman screaming. *Id*.

At Carolyn's home, Jackson heard a woman yelling for help and stating "he is trying to kill me." *Id*. Jackson entered Carolyn's home through a window. *Id*. Jackson describes Plaintiff's arrest as follows:

> While climbing through the window, I observed Carolyn completely nude fighting with Christopher to hold him down from attacking her. While inside the bedroom of the residence, I ordered them to stop fighting. Carolyn then complied with my orders and exited the bedroom. I then ordered Christopher, who was on the floor of the bedroom, to show me his hands several times. Christopher would not comply with my orders. While Christopher was on the floor, I observed him motion as if he was trying to push or grab something underneath the bed. At that time, I unholstered my X2 Taser and ordered Christopher again to show me his hands. Christopher then showed me his hands and I ordered him to stand up slowly. When Christopher stood up, I observed his nose bleeding profusely. I then ordered Christopher to keep his hands up and he kept dropping them. At that time, another officer tried to handcuff Christopher and Christopher started fighting us. I yelled Taser several times then deployed my X2 Taser. Due to Christopher wearing thick coveralls, I was unable to make full contact with the probes. I then deployed my Taser a second time.
>
> When I deployed my Taser a second time, I was able to make contact with Christopher and he was placed under arrest. Christopher was then escorted out of the residence. While outside of the residence, another officer searched Christopher for weapons. That officers removed a red and black Craftsman pocket knife from his right front pocket, and a roll of duct tape from his right rear pocket.
>
> Christopher then became very belligerent stating, "if I get out of the handcuffs this 53 year old nigger is going to beat young city nigger ass." The other officer then began to escort Christopher to a patrol unit. At that time, Christopher broke free from the officer and he started running towards 124 Wilson Drive in a dark wooded area of the house. 124 Wilson Drive was the area where Christopher hid from us on the prior call for service.
>
> Due to the fact of Christopher threatening us to get out of the cuffs and Christopher trying to harm Carolyn, the other officer deployed his X2 Taser which was unsuccessful. At that time, the officer fired his Taser again and Christopher fell to the ground. When I approached Christopher to help him off the ground he started

> kicking me. The other officer and I were able to gain control of Christopher and escorted him to the patrol unit.

*Id*. at 2-3.

Jackson states that no officer kicked Plaintiff and that Plaintiff never lost consciousness. According to Jackson, the injuries to Plaintiff's head, neck, and face were inflicted by Carolyn. *Id*. at 3.

Defendant Pitts corroborates Jackson's statements. In his affidavit, Pitts states that Jackson deployed his taser twice in order to subdue Plaintiff while in Carolyn's house. *See* [53-3] at 2. Pitts states that Plaintiff threatened the officers. *Id*. at 2. Pitts explains that he was the officer escorting Plaintiff to a patrol car when Plaintiff broke free from his grip and attempted to flee. *Id*. at 3. Pitts describes the subsequent events as follows:

> I then gave loud verbal commands for Mr. Banks to stop, and when he did not, I yelled 'Taser' multiple ties, and then fired my Taser at Mr. Banks. When the first probes struck Mr. Banks, they did not make a connection, and he continued to run toward the back yard. I then fired my Taser again, striking Mr. Banks in the upper right shoulder, and lower left area of his back. Mr. Banks then fell to the ground.
>
> As Sergeant Jackson approached Mr. Banks to help assist him off the ground, he began to kick at Sergeant Jackson. Once we were able to get Mr. Banks to his feet, Sergeant Jackson and I escorted him to Officer Sullivan's patrol vehicle, and placed him in the back seat.

*Id*. at 3.

In his affidavit, Defendant Sullivan also states that Jackson deployed his taser in order to subdue Plaintiff while in Carolyn's house and that, once outside, Plaintiff attempted to flee, causing Pitts to give chase and deploy his taser in order to subdue Plaintiff. *See* [53-4] at 2. Like Jackson, Defendants Pitts and Sullivan state that no officer kicked Plaintiff, that Plaintiff never lost consciousness, and that the injuries to Plaintiff's head, neck, and face were inflicted by Carolyn. *Id*. at 3; [53-3] at 3. Carolyn corroborates the officers' statements in her affidavit,

8

stating that she caused Plaintiff's injuries when he attempted to rape her and that she did not see any officer kick Plaintiff. *See* [53-1] at 3.

Plaintiff presents a somewhat different version of events than those described by Carolyn, Jackson, Pitts, and Sullivan. However, even accepting Plaintiff's version of events as true,[3] Plaintiff has failed to demonstrate a genuine issue as to any material fact. The record does not demonstrate that the actions of Defendant Pitts and Sullivan were objectively unreasonable.

In this action, Plaintiff has alleged that three officers used excessive force against him: former defendant Jackson and the current individual Defendants Pitts and Sullivan. Beginning with the force used on Plaintiff while he was in his estranged wife's house, Plaintiff alleges that an officer was placing him in restraints when either Pitts or Sullivan used a taser on him even though he was not resisting. Plaintiff, however, was not certain of any officers' identity, and Officer Jackson, in his affidavit, admits that he was the officer who used his taser on Plaintiff while they were in the house. *See* [53-2]. Pitts and Sullivan also testify that Jackson first used a taser on Plaintiff. *See* [53-3]; [53-4].

In order to overcome the defense of qualified immunity at the summary judgment stage, Plaintiff cannot rest on mere allegations or assertions but must point to specific evidence in the record demonstrating a material fact issue. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). Plaintiff failed to respond to the Motion for Summary Judgment [53]. Plaintiff's testimony at his *Spears* hearing may constitute competent summary judgment evidence, but his testimony demonstrates that he does not know the identity of the officer who first used a taser on him. Plaintiff has not come forward with evidence disputing the summary judgment evidence

---

[3] When confronting a qualified immunity inquiry at the summary judgment stage, courts "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004).

submitted by Defendants Pitts and Sullivan demonstrating that Jackson first used a taser on Plaintiff. Accordingly, the Court should dismiss Plaintiff's claims against Defendants Pitts and Sullivan arising from the use of force inside the house.

Turning to the events outside the house, Pitts states that he used his taser on Plaintiff after he attempted to flee. *See* [53-3] at 3. For his part, Plaintiff alleges that he did not flee. Plaintiff, however, admits that he "jumped back and moved" before the officer used the taser.[4] Plaintiff's own allegations demonstrate that Pitts's actions were reasonable considering the circumstances created by Plaintiff's actions.

As previously mentioned, the reasonableness of the force used is determined by considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Pitts was aware that earlier in the night Plaintiff had attempted to break into Carolyn's home and had fled the residence before police officers arrived. *See* [53-3] at 2. Pitts knew that Plaintiff eventually succeeded in breaking into the home, and he witnessed Plaintiff violently attacking Carolyn.[5] *Id*. He knew that during the attack, Plaintiff had a knife and a roll of duct tape in his pockets. *Id*. Pitts also heard Plaintiff threaten to get out of his restraints and hurt Pitts and the other officers. *Id*. Pitts explains his decision to use his taser:

> Due to Mr. Banks threatening to get out of his cuffs and assault myself and fellow officers, and not knowing if Mr. Banks had hidden a weapon in the wooded area behind the house when he hid from us earlier in the night, I decided to draw my taser and attempt to stop Mr. Banks before he could escape into the dark area behind 124 Wilson Drive.

---

[4] In his Complaint [1], Plaintiff states that he "moved away from the officer."

[5] Plaintiff was subsequently convicted of aggravated domestic violence and sentenced to twenty years in the custody of the Mississippi Department of Corrections. *See* [53-5].

10

*Id*. at 3.

Plaintiff does not dispute that he violently attacked Carolyn, that he did so while possessing a weapon, or that he threatened to get out of his restraints and hurt the officers. Given these circumstances, together with Plaintiff's admitted actions of jumping back and moving, it was not unreasonable for Pitts to use his taser to prevent Plaintiff from fleeing or posing a threat to the officers. *See Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021); *Batiste v. Theriot*, 458 Fed. Appx. 351, 355 (5th Cir. 2012); *Campos v. Beeville Police Dept.*, 2015 WL 4389105, at *5 (S.D. Tex. July 15, 2015).

Plaintiff also alleges that he fell to the ground after being tased and an officer kicked him in the face until he was unconscious. It is clear that once an arrestee has been handcuffed and subdued—and is no longer resisting—the act gratuitously harming the arrestee constitutes excessive force. *See Griggs v. Brewer*, 841 F.3d 308, 315 (5th Cir. 2016); *Bush v. Strain*, 513 F.3d 492, 501-02 (5th Cir. 2008). The evidence of record, however, does not show that Plaintiff was subdued once he was on the ground. In their affidavits, both Pitts and Jackson testify that once Plaintiff was on the ground, Plaintiff began to kick Jackson. *See* [53-2] at 3; [53-3] at 3. Plaintiff does not dispute the officers' testimony that he kicked Jackson while he was on the ground.[6]

---

[6] "[P]laintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). To meet this burden, Plaintiff must allege sufficient facts to show that Defendants' conduct amounted to a constitutional violation and that no reasonable officer could have believed his action were proper. *Samford v. Bowers*, 2000 WL 140751, at *4 (N.D. Tex. Feb. 4, 2000) ("the plaintiff must allege 'detailed facts supporting the contention that the plea of immunity cannot be sustained'") (quoting *Nieto v. San Perlita Indep. Sch. Dist.*, 894 F.2d 174, 178 (5th Cir. 1990)); *Ybarra v. Lubbock Police Dep't. Officer*, 2016 WL 7664344, at *3 (N.D. Tex. Apr. 5, 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)); *Childers v. San Saba County*, 2016 WL 10988779, at * 6 (W.D. Tex. Apr. 22, 2016).

Officers are not prohibited from using necessary force on an arrestee who is on the ground and/or wearing restraints when the arrestee is not actually subdued. *See Tucker v. City of Shreveport*, 998 F.3d 165, 182-83 (5th Cir. 2021) (officers' conduct did not violate law when they used force consisting of kicks and strikes against arrestee while he was on the ground kicking his legs and not lying still); *Griggs*, 841 F.3d at 313-15 (finding officer's conduct was objectively reasonable when he took an arrestee to the ground and repeatedly punched him in the back of the head so that he could gain control of the arrestee's arms and handcuff him); *Escarcega v. Jordan*, 701 Fed. Appx. 338 (5th Cir. 2017) (holding police officers did not use excessive force by kicking and punching arrestee while effectuating his arrest); *Jackson v. Hebert*, 2018 WL 3421854, at *8-9 (W.D. La. July 13, 2018) (holding that an officer's actions were reasonable where the plaintiff actively resisted the officer's attempts to place him in a patrol car); *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) ("nothing about the use of chemical spray or even a choke-hold was objectively unreasonable conduct where the suspect physically resisted arrest"); *Poole v. Russell*, 2016 WL 6082041, at *6-7 (W.D. La. Oct. 18, 2016) (holding that a plaintiff's resistance to arrest made a police officer's decision to pin the plaintiff to the floor with his knee objectively reasonable). Thus, even if Defendants kicked Plaintiff while he was on the ground, the use of force was "the sort of 'split-second judgment' in a difficult situation that qualified immunity is designed to protect." *Griggs*, 841 F.3d at 316 (quoting *Graham*, 490 U.S. at 396-97)). Accordingly, Defendants Pitts and Sullivan are entitled to qualified immunity, and Plaintiff's claims against them should be dismissed.

As previously mentioned, Plaintiff also named the City as a Defendant, alleging that the City's mayor made public comments indicating that he supports police officers after the

demonstrations precipitated by the death of George Floyd in Minneapolis, Minnesota and after Plaintiff's arrest. This allegation clearly does not rise to the level of a constitutional violation.

To the extent Plaintiff seeks to assert claims against the City arising from the conduct of its officers, Plaintiff has failed to demonstrate that any official policy or custom was the "moving force" behind an alleged deprivation of Plaintiff's constitutional rights arising from the conduct of its officer as required under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Moreover, Plaintiff has failed to establish an underlying constitutional violation arising from the officers' conduct. *See Cannady v. Clay Cty. Mississippi*, 781 Fed. Appx. 350, 353 (5th Cir. 2019).

## RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Summary Judgment [53] be GRANTED and that this action be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject, or modify in whole or in part the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This the 2nd day of August, 2022.

                                              s/ Michael T. Parker
                                              United States Magistrate Judge